LAW OFFICES

# WOODLEY & McGILLIVARY LLP

1101 VERMONT AVENUE, N.W.
SUITE 1000
WASHINGTON, D.C. 20005
TELEPHONE: (202) 833-8855
FAX: (202) 452-1090
E-MAIL: INFO@WMLABORLAW.COM

THOMAS A. WOODLEY
GREGORY K. McGILLIVARY
DOUGLAS L. STEELE
MOLLY A. ELKIN
DAVID RICKSECKER
MEGAN K. MECHAK
SARA L. FAULMAN
DIANA J. NOBILE
REID COPLOFF
SARAH M. BLOCK
WILLIAM W. LI
JOHN W. STEWART
MATTHEW D. PURUSHOTHAM
HILLARY LeBEAU
AFROZ BAIG
MICHAEL R. KEEFE

EDWARD J. HICKEY, JR.
(1912-2000)

November 5, 2018

**By ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 1105
New York, NY 10007

      Re:    *Chaya Kearse, et al. v. City of New York*,
               Civil Action No. 17-CV-09982 (JMF)(BCM)

Dear Judge Furman:

      Plaintiffs respectfully submit this letter on behalf of all parties regarding the parties' proposed settlement in the above-referenced case. For the reasons set forth below, the settlement is fair and reasonable, and should be approved. The signed Settlement Agreement (Exhibit 1); and a proposed Order (Exhibit 2) are attached. The Plaintiffs have been informed of the terms of the settlement and have been provided with an opportunity to review the settlement agreement. All sixteen of the Plaintiffs approve of the settlement. Accordingly, upon this Court's approval, this Settlement Agreement will take effect.

    **I.**    **Claims Asserted and Procedural History**

      This is an action brought under the Fair Labor Standards Act (FLSA) to recover unpaid overtime compensation on behalf of sixteen current and former employees of the New York Department of Homeless Services (DHS), during the time period they worked at DHS as Principal Administrative Associates I and/or IIs ("PAAIs and/or PAAIIs). Plaintiffs Chaya Kearse, Ahmed Omer, Jannette Nyack, Joyce Fields, Virginia Cruz, Evadne Wilson, Janice Chase and Tabatha Heckstall filed their complaint on December 21, 2017, on behalf of themselves and other similarly situated PAAIs and PAAIIs, alleging various overtime pay violations under the FLSA, including allegations of unpaid pre-shift, post-shift, and meal period work, late payment of overtime, miscalculation of the rate at which FLSA overtime was paid by failing to include all shift differentials in the calculation of the rate at which overtime was paid, and miscalculation and payment of overtime at the straight time rate of pay for overtime hours worked in excess of 40 hours a week. (ECF Dkt. 1). These eight Plaintiffs are former parties to *Lynch et al. v. City of New York*, 1:16-cv-05677-KBF, which was also brought under the FLSA by PAAIs and PAAIIs at DHS. These Plaintiffs were dismissed without prejudice after the Honorable Katherine B. Forrest

held that they were not "similarly situated" to the named Plaintiffs.[1] *See Lynch et al. v. City of New York,* 1:16-cv-05677-KBF, ECF Dkt. 90 (S.D.N.Y. Nov. 16, 2017). Specifically, the Court found that equitable tolling was appropriate as the Plaintiffs had diligently attempted to join the *Lynch* lawsuit within the applicable statute of limitations, participated in discovery, and faced dismissal simply on procedural issues. *Id.* Those Plaintiffs filed the instant lawsuit and were joined by additional Plaintiffs who perform similar job duties under the same work policies and procedures.

On December 26, 2017, Plaintiffs filed their First Amended Complaint, joining former *Lynch* Plaintiff Patricia Gordon to this action. (ECF Dkt. 6). On February 2, 2018, Plaintiffs filed their Second Amended Compliant, adding Dianne Clarke, Adrian Straker, Tamyra Winningham-Hyppolite, Lorna Glasgow, Maxine Wilson and Colin Chang to this action. (ECF Dkt. 19). On May 14, 2018, Plaintiffs filed their Third Amended Complaint adding Jeanette Rodriguez. (ECF Dkt. 34).

Prior to the filing of the complaint, Plaintiffs' counsel met with the Plaintiffs to learn about the Plaintiffs' work practices and how they were paid, and to determine information to meet the pleading requirements of *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013). Plaintiffs then filed the complaint. (ECF Dkt. 1). Judge Katherine B. Forrest declined this case as not related on January 18, 2018.

On January 19, 2018, this Court ordered the parties to participate in its Early Mediation program and referred the case to Magistrate Judge Barbara C. Moses. (ECF Dkts., 10, 11). The parties first appeared before Magistrate Judge Moses on March 12, 2018 for a settlement conference, during which time they did not come to an agreement. (ECF Minute Entry, Mar. 12, 2011).

On February 23, 2018, Defendant filed a partial Motion to Dismiss the Second Amended Complaint, arguing that the specific claims for which each Plaintiff had no damages should be dismissed. (ECF Dkt. 21).

On March 12, 2018, the Court in *Lynch v. City of New York*, supra, issued an Order granting summary judgment to the *Lynch* Plaintiffs as to Defendant's liability concerning violations of the FLSA on the Plaintiffs' uncompensated minutes, regular rate and compensatory time claims. *Lynch*, supra, 1:16-cv-05677-KBF, ECF Dkt. 112. The Court also held that Plaintiffs are entitled to liquidated damages, as the City failed to demonstrate that its actions were objectively reasonable or taken with subjective good faith. *Id.*

---

[1] On November 16, 2017, Judge Forrest entered an order dismissing Janice Chase, Virginia Cruz, Joyce Fields, Tabatha Heckstall, Chaya Kearse, Jannette Nyack, Evadne Wilson, Ahmed Omer, and Patricia Gordon, among others, from *Lynch et al. v. City of New York*, 1:16-cv-05677-KBF, without prejudice and equitably tolling the statute of limitations for those Plaintiffs until December 26, 2017 to file a new Complaint. *See Lynch et al. v. City of New York*, 1:16-cv-05677-KBF, ECF Dkt. 90 (S.D.N.Y. Nov. 16, 2017). Accordingly, the filing date for those Plaintiffs reflects the date on which their consent was filed with the Court in *Lynch et al v. City of New York*, July 15, 2016. Jeannette Rodriguez was also dismissed from *Lynch* on November 16, 2017; because she did not join this lawsuit prior to December 26, 2017, her filing date is the date her consent was filed with this Court, May 14, 2018.

2

The Court granted Defendant's partial Motion to Dismiss the Second Amended Complaint on May 1, 2018. (ECF Dkt. 30). On May 9, 2018, the Court granted Plaintiffs leave to file a Third Amended Complaint. (ECT Dkt. 33).

The City Answered Plaintiff's Third Amended Complaint on June 8, 2018. (ECF Dkt. 36). Because the parties had already engaged in discovery in connection with the ten *Lynch* Plaintiffs (Kearse, Chase, Cruz, Fields, Gordon, Heckstall, Nyack, Omer, E. Wilson and Rodriguez) regarding their claims in this case, the parties discussed entering into a discovery stipulation to use the discovery obtained in *Lynch*. (ECF Dkt. 31). Similarly, Plaintiffs indicated that they would not seek to take additional, cumulative Rule 30(b)(6) testimony. *Id.* The parties began engaging in settlement talks before coming to a formal agreement.

In addition, Defendant responded to Plaintiffs' written discovery, producing payroll and punch data for the sixteen Plaintiffs. Plaintiffs' expert witness then analyzed the computerized punch and payroll data pursuant to Plaintiffs' counsel's instructions and prepared an accounting of damages.

In September 2018, the parties entered into a discussion about potentially resolving the case, and counsel for Defendant requested that the Plaintiffs provide an updated settlement demand, and the detailed, daily, billing records for the attorneys associated with the case. Plaintiffs provided the requested documents and the parties, through their counsel and in consultation with their clients, engaged in a series of telephone calls to discuss potential settlement. The parties ultimately reached a settlement that would resolve the entire lawsuit. Specifically, the parties agreed on the settlement amounts for backpay, liquidated damages, and attorneys' fees and expenses. The parties' representatives signed the enclosed settlement agreement on November 5, 2018.

Plaintiffs' counsel has notified Plaintiffs of the terms of the settlement agreement, including the total amount of backpay and liquidated damages to be paid, the methodology for assigning damages, and the amount of attorneys' fees and costs, and were given a period of time to object to any of those figures. Plaintiffs' counsel has invited Plaintiffs to read the settlement agreement and review the amounts that their co-Plaintiffs will be receiving under the settlement agreement. In addition, Plaintiffs' counsel engaged in telephone conferences with the Plaintiffs to review the settlement terms and seek approval. (Exhibit 3; Faulman Decl.¶30).

**To date, there have been no objections by any Plaintiff; in fact, each Plaintiff has stated directly to Plaintiffs' counsel that they approve of the settlement** (Exhibit 3; Faulman Decl. ¶31).

## II.     Terms of the Proposed Settlement

The settlement agreement provides that the City will pay a total Settlement Amount of $364,834.56 to resolve the lawsuit. The Settlement Amount will be divided as follows: (1) $104,779.00 in backpay; (2) $109,046.00 in liquidated damages; (3) reimbursement of $20,579.31 in out of pocket expenses to Plaintiffs' counsel; and (4) payment of statutory fees to Plaintiffs' counsel in the amount of $130,430.25. Settlement Agreement, Exhibit 1, ¶ 2.1.

The backpay and liquidated damages portion of the settlement funds are divided among the Plaintiffs based on their actual payroll records, which were provided by the City for each individual Plaintiff. Those records were provided through February 3, 2018, and then extrapolated

3

to August 2, 2018, for the fifteen Plaintiffs who are still working for DHS as a PAAI or PAAII. Based on the payroll information provided, and the extrapolation, it is Plaintiffs' position that the total amount of back pay for a three-year recovery period for all Plaintiffs assuming Plaintiffs worked through three meal periods each week in that recovery period is $139,880.00. However, the parties have agreed, for purposes of this settlement, that Defendant shall pay back pay in the amount of $104,779.00 and liquidated damages in the amount of $109,046.00. Exhibit 1, ¶ 2.6.

Plaintiffs' counsel has informed each Plaintiff of the methodology for assigning damages and provided each Plaintiff had an opportunity to dispute the amount of damages to which they are entitled and to review the damages for the other Plaintiffs. There have been no disputes or objections.

Paragraph 2.4 of the Settlement Agreement provides that the City will pay $130,430.25 of the Settlement Amount to Plaintiffs' attorneys after the out of pocket expenses in the amount of $20,579.31 are deducted from the Settlement Amount and reimbursed to Plaintiffs' attorneys who advanced the expenses as statutory attorneys' fees and expenses. As set forth below, this amount represents an approximately 19 percent reduction to the lodestar. Plaintiffs' counsel is handling this matter on a thirty-three and 1/3 percent (33 1/3%) contingent fee. However, the payment by the City of the statutory reasonable attorneys' fees and expenses will result in the Plaintiffs ***not paying any contingent fee whatsoever*** and that they will not have to pay any of the costs of the litigation from the $213,825.00 allocated to them under the settlement agreement.

### III. **Applicable Factors for Approving FLSA Settlements**

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  This letter addresses the factors for approving FLSA settlements, including those identified in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).  District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Courts evaluating whether stipulated FLSA settlements are reasonable consider a variety of factors, including:

    (1) the Plaintiffs' range of possible recovery;
    (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
    (3) the seriousness of the litigation risks faced by the parties;
    (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
    (5) the possibility of fraud or collusion.

*See Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (internal quotations omitted).  Factors that weigh against settlement approval "include the following: (1) 'the presence of other employees similarly situated to the claimant'; (2) 'a likelihood that the claimant's

4

circumstance will recur'; (3) 'a history of FLSA noncompliance by the same employer or others in the same industry or geographic region;' and (4) the desirability of a 'mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" *Id*. (citation omitted).

### IV.     Application of the FLSA Factors to the Proposed Settlement

As discussed below, the proposed settlement terms are fair and reasonable to the Plaintiffs and to the Defendant. The settlement represents a good faith compromise of the parties' *bona fide* dispute regarding the Plaintiffs' pre-shift unpaid overtime claims, unpaid meal period claims, post-shift unpaid overtime claims, late payment claims, regular rate calculation claims, and claims regarding the payment of straight time as overtime compensation rather than the FLSA requirement that it be paid at one and one-half times the regular rate. In addition, the settlement resolves a *bona fide* dispute regarding whether a two or three-year statute of limitations would apply to Plaintiffs' claims. The settlement also takes into account Defendant's defenses regarding the amount, if any, of uncompensated time at issue and whether the FLSA violations were willful. Plaintiffs' counsel shared their expert's calculations of the damages under Plaintiffs' theories and the parties used this information to negotiate a fair settlement. This compromise was reached after arms-length negotiations over the complicated and multi-faceted damages claims of the Plaintiffs.

#### A.     Plaintiffs' Range of Possible Recovery

Although Plaintiffs believe that they have and will be able to further testify to sufficient facts to show a continuing and systemic violation of the provisions of the FLSA overtime pay protections, the Plaintiffs are also cognizant of difficulties faced in this litigation. In particular, the Defendant claimed that the Plaintiffs did not perform work during their meal periods and that, even if they had, the City had no knowledge the work was performed. For this claim, the parties' negotiations hinged on counsel's own investigation and Plaintiffs' deposition testimony in the *Lynch* action, supra.

In addition, the Defendant argued that the pre-shift and post-shift recorded time was not work time, claiming that the Plaintiffs had enough time during their shift to perform the work assigned, so there was no reason to work before or after shift (or during lunch). The Defendant also argued that the Plaintiffs could have received overtime pay for actual hours worked by simply requesting it through the payroll system and that the fact the Plaintiffs had received overtime pay for other work upon submission of a request means that they had not been performing actual work during those pre-shift, post-shift and meal period times. The Defendant further argued that the delayed payments were the result of errors on the part of the Plaintiffs, and not any unlawful City actions. Plaintiffs disputed these allegations. Adding to the complications involved in estimating the potential recovery are issues concerning whether the Plaintiffs could establish that the Defendant's actions were "willful" so as to apply a three-year statute of limitations instead of a two-year statute of limitations to Plaintiffs' claims pursuant to 29 U.S.C. § 255(a).  For this reason, the range of potential recovery was in flux.

As reflected in paragraph 2.6 of the Settlement Agreement, the settlement will be distributed among the Plaintiffs based on the Defendant's actual timekeeping and payroll records, which were produced for each of the sixteen Plaintiffs up through February 3, 2018. For the fifteen Plaintiffs who remained employed as PAAIs and/or PAAIIs after February 3, 2018, Plaintiffs' expert extrapolated the damages from February 3, 2018, through August 2, 2018. Thus, the

5

settlement proceeds are attributable to the actual damages suffered by the Plaintiffs, individualized to their actual hours of work, rates of pay, and amount of recorded but uncompensated time recorded in the CityTime payroll system. Accordingly, the method of distributing the settlement amounts among the Plaintiffs is fair and equitable.

In the settlement in this case, the Plaintiffs have recovered a significant portion of their potential recovery at trial, including liquidated damages. The ultimate amount the Plaintiffs can recover at trial — and following the Defendant's likely appeal — would depend on factors such as whether the Plaintiffs could establish that they worked through more than two of their meal periods, on average, each week; whether Plaintiffs would recover two or three years as a statute of limitations; and how much time, if any, that a jury would find that the Plaintiffs worked off-the-clock, including time that is not reflected on Defendant's time keeping system during unpaid meal periods.

While there are many ways to look at the damages recovered, one way to value the gross settlement amount for the Plaintiffs of $213,825.00 is that in overtime workweeks, it reflects payment to each Plaintiff for working through two and a half 60-minute unpaid meal periods each week; payments to each Plaintiff for working during all of the recorded, but unpaid, pre-shift and post shift time; payments to each Plaintiff, if applicable, for their claims of improper calculation of the regular rate; and payments for the improper payment of overtime at a straight-time rate. The liquidated damages amount is equal to 100% of the back pay plus payments for improper delay of overtime payments. The gross settlement amount also includes a 2.5-year statute of limitations

### B.  Avoiding Anticipated Burdens and Expenses

Litigating the FLSA claims through discovery, summary judgment briefing and trial would be a fact-intensive process demanding costly litigation by both parties. Without this settlement, both parties would need to spend significant amounts of time, money and expense to undertake additional Plaintiff depositions, supervisor depositions, summary judgment briefing, pre-trial briefing, trial preparation, and then the trial itself and any post-trial appeal efforts.

### C.  Seriousness of Litigation Risks

As noted above, although the Plaintiffs in *Lynch* prevailed on many of their claims during the summary judgment briefing, there is no guarantee that Plaintiffs in this case will similarly prevail. Further, even if Plaintiffs do similarly prevail in summary judgment, there is no guarantee of what the jury would find with respect to the amount of damages. The Plaintiffs' allegations detailed various continuing violations of the FLSA, but the Defendant raised issues that a jury could consider favorably during deliberations over the damages. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

### D.  Arm's-Length Bargaining

Both parties engaged in good faith, arm's-length negotiation in reaching this settlement. Counsel for both parties, armed with instructions from their clients, discussed settlement terms during a number of telephone calls and letters until a tentative settlement offer was reached. In particular, Plaintiffs' expert witness analyzed detailed payroll information and timekeeping records for each of the Plaintiffs. The settlement terms were approved by the City and by the sixteen Plaintiffs. Those sixteen Plaintiffs were informed of the settlement terms, and they have been informed of their opportunity, if they so choose, to object to the settlement terms on an

6

individual basis. In addition, they were informed of the settlement distribution methodology and had an opportunity to dispute the amount of damages awarded to them. No Plaintiff submitted a dispute, and no one has objected to the settlement terms.

### E.     Possibility of Fraud or Collusion

Given the parties' arms-length negotiating, there was no opportunity for and no possibility of fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be an appropriate settlement.

### F.     Attorneys' Fees and Costs

An employer who violates the provisions of the FLSA is liable for the legal fees of the employees. Specifically, Section 216(b) of the FLSA provides that the "court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the Defendant, and costs of the action." 29 U.S.C. § 216(b); *Young v. Cooper Cameron Corp*., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the Defendant, and costs of the action'"); *Barfield v. NYC Health & Hosp. Corp*., 537 F.3d 132, 151 (2d Cir. 2008) ("the FLSA directs courts to award prevailing Plaintiffs reasonable attorney's fees and costs").

Where, like here, a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award. *Wolinsky*, 900 F. Supp. 2d at 336. In FLSA actions that are brought on behalf of individuals, and not resolved on a collective basis, there is "a greater range of reasonableness for approving attorneys' fees." *Ibid*.[2] To aid a court in determining the reasonableness of a proposed attorney fee, Plaintiffs must demonstrate that the hours were reasonably spent by counsel, and the reasonableness of the hourly rates claimed. *Allende v. Unitech Design, Inc*., 783 F. Supp. 2d 590, 512 (S.D.N.Y. 2011). In determining a reasonable award of attorneys' fees, this Court will also consider the "traditional criteria" including but not limited to: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of litigation; the quality of representation and public policy considerations. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (internal quotations omitted). An analysis of all of these criteria supports the award of the statutory fee agreed to by the City.

#### (a) The Time and Labor Required Was Extensive and the Rates are Reasonable

Here, the Defendant has agreed to pay statutory fees and expenses in the amount of $151,009.56 to the law firms of Woodley & McGillivary LLP and Spivak Lipton LLP. Of these

---

[2]The reasonableness of the fee is further buttressed by the fact that Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by the Plaintiffs as it was negotiated for as a separate matter. *See Cisek v. Natl*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by Plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest, and there was no reason to conclude that Plaintiffs' counsel benefited at the expense of their clients).

amounts, $20,579.31 represents expenses incurred by Plaintiffs' counsel. The City's agreement reimburses the Plaintiffs for their expenses and provides Plaintiffs' counsel with a portion of their statutory FLSA attorneys' fees. The amount of the fees recovered were negotiated arms-length and represent an approximately 19% reduction to the lodestar amount of fees accrued in the case.

In an FLSA action, the legal fees recovered need not be proportional to the amount of damages recovered for the Plaintiffs. *See, e.g., Guallpa v. N.Y. Pro Signs Inc*., 2014 WL 22003, *11 (S.D.N.Y. May 27, 2014) ("[t]he legal fees to be awarded need not be proportional to the Plaintiff's recovery in FLSA cases because the award of a reasonable fee vindicates Congressionally identified policies and rights.") (internal quotation omitted); *Merino v. Beverage Plus Am. Corp.*, 2012 WL 4468182, *1 (S.D.N.Y. Sept. 25, 2012) ("In FLSA cases the attorney's fees need not be proportional to the damages…"); *Allende v. Unitech Design, Inc.,* 738 F.Supp.2d 509, 511-12 (S.D.N.Y. 2011) ("While the requested attorneys' fees exceed Plaintiffs' own recovery… that is no matter. In FLSA cases … the attorneys' fees need not be proportional to the damages Plaintiffs recover.") (citing cases).

Significant time and labor were spent by the two law firms in reaching the settlement. Plaintiffs' counsels have not been paid for any of the work that they have performed since initiating representation of Plaintiffs.  This uncompensated work has been substantial and includes: (1) interviewing witnesses; (2) preparing and filing the complaint; (3) conducting strategy meetings with all counsel; (4) communicating with Plaintiffs; (5) preparing a mediation statement; (6) engaging in mediation; (7) reviewing and editing extensive damages calculations; (8) preparing Plaintiffs for deposition and defending those depositions;[3] (9) participating in Expert witness conferences; (10) preparing settlement demands and revised settlement demands; (11) participating in multiple telephonic conferences with Plaintiffs regarding settlement; (12) participating in multiple telephonic conferences with defense counsel regarding settlement; and (13) preparing, drafting and reviewing settlement papers including a joint request for approval and attorneys' fees declarations. Faulman Decl. ¶10; Exhibit 4, Pordy Decl. ¶16.  In addition, Plaintiffs' counsel has advanced all of the substantial costs involved in the litigation, including the costs of the expert witness. Faulman Decl. ¶11

For purposes of the lodestar analysis, the firms used the same rates that they recently sought and obtained in *Lynch*, 1:16-cv-05677-KBF (ECF Dkt. 133), and two other FLSA cases settled earlier this year involving New York City Housing Authority workers, *Johnston, et al. v. NYCHA,* 16-cv-09924-JGK (ECF Dkt. 60) and *Lewis, et al. v. NYCHA*, 17-cv-00294-PKC-KNF (ECF Dkt. 87-88). These rates range from $205 an hour for new associates to $455 to $540 an hour for senior partners.  Faulman Decl. ¶14; Pordy Decl. ¶ 14.  These rates are within the range of rates approved by the courts in the Second Circuit in FLSA cases. *See e.g., See, e.g., Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); *Lora v. J.V. Car Wash, Ltd*., No. 11cv9010 (LLS) (AJP), 2015 WL 7302755, at *4-6 (S.D.N.Y. Nov. 18, 2015) (adopting report and recommendation and finding $500 per hour to be reasonable rate in FLSA case for attorney with 28 years' experience); *Guallpa v. N.Y. Pro Signs Inc.,* No.

---

[3] Because the parties agreed to enter into a discovery stipulation or agreement permitting the parties to use discovery obtained in *Lynch*, supra, Plaintiff's attorneys' fees here include time spent preparing written discovery and preparing for and defending the depositions of the Plaintiffs who were previously served with discovery and deposed in *Lynch*.

8

11cv3133 (LGS) (FM), 2014 WL 2200393, at *9-10 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour, in wage-and-hour case, for attorney who graduated law school in 1995), report and recommendation adopted sub nom., *Guallpa v. NY Pro Signs Inc.,* No. 11cv3133 (LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Torres v. Gristede's Operating Corp.,* No. 04cv3316 (PAC), 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. App'x 1 (2d Cir. 2013) (findings that hourly rates of $550 and $500 were reasonable for partners in FLSA case).

As set forth above, using these rates for hours of work performed through November 1, 2018, the lodestar amount equals $160,691.00. Faulman Decl. ¶ 13. Pordy Decl. ¶ 17. Thus, the fee requested represents an amount that is approximately 19% percent less than the lodestar. As noted above, when Plaintiffs retained Plaintiffs' counsel, Plaintiffs agreed to pay Plaintiffs' counsel a thirty-three and 1/3 percent contingent fee on the monies recovered on their behalf. However, since the statutory attorneys' fees to be paid to Plaintiffs' counsel exceed this amount, Plaintiffs are not paying any contingent fee in this case. Plaintiffs' counsel took a significant cut on their lodestar fee as part of the parties' good faith negotiations, allowing the parties to reach a reasonable compromise.

### (b) The Litigation was Complex

The United States Supreme Court has long recognized that "FLSA claims typically involve complex mixed questions of fact and law[.] These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728 (1981). On top of an already complex scenario, the substantial pay data and punch data produced for the Plaintiffs for a three-year recovery period required extensive review and management and required significant effort to cull and present for damage calculations. But for the discovery, including the analysis using these payroll and punch documents, the successful result would never have been able to be achieved.

### (c) The Risk of Litigation

Second Circuit precedent holds that, when considering the reasonableness of fees, the district court should consider "the consequent risk of non-payment viewed *as of the time of filing the suit*." *Henry v. Little Mint*, *Inc.*, 2014 U.S. Dist. LEXIS 72574 at *43 (S.D.N.Y. May 23, 2014) (emphasis added); *see also Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556 at *37-38 (S.D.N.Y. Apr. 16, 2012); *Johnson*, 2011 U.S. Dist. LEXIS 105775 at *58. In other words, a court should credit counsel for bearing the risk of litigation prior to any guarantee of success. Here, Plaintiffs' counsel undertook to prosecute this action without any guarantee of payment and litigated on a contingent basis. Plaintiffs' counsel was required to make a significant investment of time and resources without a guarantee of any kind. Accordingly, Plaintiffs' counsel faced significant obstacles of recovery.

### (d) The Quality of Representation

As noted in the Declarations of Hope Pordy and Sara Faulman, Plaintiffs' counsels are seasoned successful lawyers in the wage and hour field. Faulman Decl. ¶¶ 3-5, 8, 20-24; Pordy Decl. ¶¶ 6-10, 13. Ms. Faulman and Ms. Pordy have served as counsel and lead counsel in many FLSA court and arbitration cases, collecting damages resulting from unpaid wages for workers nationwide. Both Ms. Pordy and Ms. Faulman are frequent speakers on FLSA and other wage and

hour topics at numerous CLE conferences nation-wide. In addition, Ms. Pordy serves on the Steering Committee of the Wage and Hour Committee for the New York branch of the National Employment Lawyers' Association and has also been the Co-Chair of the Leadership Development Program for the American Bar Association's Section on Labor and Employment Law since 2016. Both firms were supported by diligent, hard-working associates and paralegals who helped bring this case to a favorable resolution for the Plaintiffs.

### (e) Public Policy Weighs in Favor of Approving the Fee

The provision for attorneys' fees in the FLSA is intended "to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010); *see also Braunstein v. Eastern Photgraphic Labs., Inc*., 600 F.2d 335, 336 (2d Cir. 1978) (explaining that the FLSA "should be given a liberal construction" because of its "broad remedial purpose"). Here, the City agreed to pay the Plaintiffs' statutory legal fees and costs. Without the ability to collect at least a portion of the lodestar amount, the remedial purpose of the FLSA would not be fulfilled as attorneys would be unable to bring such cases. See, e.g., *Silverstein v. Stamatelos*, 2013 U.S. Dist. LEXIS 1797334 (S.D.N.Y. 2013) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims that might otherwise be too small to justify retention of able, legal counsel"). Thus, public policy favors approval of the amount of fees and costs agreed to by the Defendant.

### G.   Factors Weighing Against Settlement

None of the *Wolinsky* factors weighing against settlement are present in this case. Consistent with their obligations in light of the Second Circuit's decisions in *DeJesus v. HF Mgmt. Servs.,* 726 F.3d 85 (2d Cir. 2013) and *Lundy v. Catholic Health System of Long Island,* 711 F.3d 106 (2d Cir. 2013), Plaintiffs' counsel undertook a careful and thorough investigation of the Plaintiffs' claims before filing the instant lawsuit. The City worked diligently with Plaintiffs' counsel to litigate and ultimately resolve this case. Accordingly, none of the factors identified in *Wolinsky* as weighing against settlement are present here.

### V.   Conclusion

For all of the above reasons, the parties believe that this proposed settlement is a favorable outcome and will appropriately compensate Plaintiffs for the overtime pay issues that are the subject matter of this litigation. Accordingly, the parties respectfully submit that the settlement is fair and reasonable and should be approved by the Court. We appreciate the Court's consideration of these matters.

Respectfully submitted,

WOODLEY & McGILLIVARY LLP

Sara L. Faulman

cc: All Counsel by ECF